IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

ROOSEVELT THOMAS,
      Plaintiff,

vs.                            Case No.:  5:11cv225/MW/EMT

CORRECTIONAL COUNSELOR SOREY,
      Defendant.
_____/

## REPORT AND RECOMMENDATION

      Plaintiff Roosevelt Thomas ("Thomas"), an inmate of the Florida Department of Corrections ("DOC") proceeding pro se and in forma pauperis, commenced this case on June 28, 2011, by filing a civil rights complaint pursuant to 42 U.S.C. § 1983 (doc. 1).  Thomas subsequently filed a Third Amended Complaint (doc. 27), which is the operative pleading.  On November 5, 2012, Defendant Sorey ("Sorey") filed a motion to dismiss, or in the alternative, for summary judgment (doc. 47). The court directed Thomas to respond to the motion (doc. 48), but he has not done so.  Upon review of the evidence in the summary judgment record, it is the opinion of the undersigned that Sorey's motion should be granted.

I.      BACKGROUND AND PROCEDURAL HISTORY

      Thomas is suing Sorey, claiming that while he was housed at Graceville Correctional Facility ("Graceville C.F.") in March of 2011, Sorey retaliated against him for filing administrative grievances, in violation of the First Amendment, by moving him from the most desirable dormitory to the least desirable dormitory on the compound (doc. 27 at 5–7).  Thomas seeks an injunction enjoining Sorey from violating his rights, retaliating against him in the future, and lying about him (*id.* at 7).  He also requests "any other justice this Court sees proper for violation of [his] rights" (*id.*).

Sorey, in her motion for summary judgment, argues she is entitled to summary judgment because she had no involvement in the decision to transfer Thomas (doc. 47 at 2–13). She further argues there was a legitimate penological interest for transferring Thomas to a different housing unit (*id.*). Sorey also argues Thomas' complaint is moot, because he only seeks injunctive relief, and he was transferred to Jefferson Correctional Institution on October 26, 2012 (*id.*). Sorey submitted evidence in support of her arguments, including affidavits from the warden and a quality assurance manager at Graceville C.F. (doc. 47, Exs. A, B). The undersigned issued an order on November 6, 2012, notifying the parties that the court would treat Sorey's motion as a motion for summary judgment (doc. 48). The court advised Thomas of the procedural rule and legal standards governing summary judgment motions, and directed Thomas to file a response to the motion within thirty (30) days (*id.*). The court extended the deadline, at Thomas' request and on the court's own motion, several times (*see* docs. 49, 50, 55, 56, 59, 63). The most recent deadline was June 14, 2013 (*see* doc. 63). As of the date of this Report and Recommendation, Thomas has not filed a response to Sorey's motion.

II.    MATERIAL FACTS

As this case comes before the court on Sorey's motion for summary judgment, the court views the facts in the light most favorable to Thomas, the non-moving party, *see* Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993), drawing those facts from the pleadings, depositions, and other evidentiary materials on file. The court resolves all issues of material fact in Thomas' favor and approaches the facts from Thomas' perspective, because the issues concern not which facts the parties might be able to prove, but, rather, whether or not certain given facts showed a violation of clearly established law. *See* Terrell v. Smith, 668 F.3d 1244, 1250 (11th Cir. 2012) (citation omitted). Thus, the operative facts at the summary judgment stage "may not be the 'actual' facts of the case." Priester v. City of Riviera Beach, Fla., 208 F.3d 919, 926 n. 3 (11th Cir. 2000). The court conveys only those facts that are material.

With regard to the factual positions asserted by the parties, the court applies the standard set forth in Rule 56(c) of the Federal Rules of Civil Procedure, which provides in relevant part:

**(1) Supporting Factual Positions.**  A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> . . . .
>
> **(4) Affidavits or Declarations.**  An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed. R. Civ. P. 56(c) (2010).  If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court will consider the fact undisputed for purposes of the motion for summary judgment, or grant summary judgment if Sorey's motion and supporting materials—including the facts considered undisputed—show that Sorey is entitled to it.  *See* Fed. R. Civ. P. 56(e)(2, 3) (2010).

Finally, any facts included in Sorey's statement of material facts are deemed admitted, because Thomas did not controvert them.  *See* N.D. Fla. Loc. R. 56.1(A) (all material facts set forth in moving party's statement of undisputed material facts will be deemed admitted unless controverted by statement required to be filed and served by opposing party).  Applying these standards, the court conveys the following as the material facts.

On June 22, 2009, while Thomas was housed in A-dorm at Graceville C.F., he was given the job assignment of food service worker (Ellis Aff., Ex. 1).  Four days later, on June 26, 2009, Thomas was transferred to E-dorm (*id.*).  E-dorm is a "program" dorm, meaning, typically the inmates housed in E-dorm participate in either the dog training program or the faith based program (doc. 47, Ex. B, Affidavit of Tracy Price ¶ 6).  Additionally, inmates housed in E-dorm are traditionally employed as food service workers or have other "meaningful" employment roles within the correctional facility (*id.*).  Thomas describes E-dorm as having two-man cells; the showers are "compartmentalized," offering a fair measure of privacy; and the dorm is extremely quiet, because the television can only be heard via short wave radio signal accessible on an FM radio band (doc. 27 at 5).  Thomas was reassigned from food service worker to houseman on August 14, 2009 (doc.

47, Ellis Aff., Ex. 1). Three days later, on August 17, 2009, he was transferred to D-dorm (*id.*). Thomas describes D-dorm as similar to a warehouse, with rows and rows of bunks aligned next to each other; the showers are open, offering no privacy; and the noise is incessant throughout the day, with televisions blaring (doc. 27 at 6). On August 27, 2009, Thomas was transferred back to E-dorm and retained his work assignment as a houseman (*id.*). Thomas remained in E-dorm, assigned as a houseman, until March 31, 2011, when he was transferred to D-dorm (doc. 27 at 5; Ellis Aff., Ex. 1; *see also* Ellis Aff. ¶ 5; Price AFf. ¶ 5).[1]

Sorey is employed by Corrections Corporation of America ("CCA") at Graceville C.F. as a correctional counselor, and holds the rank of sergeant (doc. 47, Sorey's Statement of Facts ¶ 3; Ex. A, Affidavit of Warden Jason Ellis ¶ 4). Sorey was assigned to E-dorm and, according to Thomas, frequently used abusive and profane language when addressing inmates (doc. 27 at 5). Thomas filed three administrative grievances complaining that Sorey's conduct was unprofessional and requesting that she temper her language (*id.* at 5–6). On March 31, 2011, Sorey directed Thomas to pack his property and moved him to D-dorm (doc. 27 at 6).

At the time of Thomas' transfer to D-dorm, Tracy Price ("Price") was the Unit Manager in charge of E-dorm (doc. 47, Sorey's Statement of Facts ¶ 10; Price Aff. ¶ 4). Thomas did not participate in the dog training program or the faith based program, and was not employed as a food service worker at that time (doc. 47, Sorey's Statement of Facts ¶ 13; Price Aff. ¶ 7). Price was the person responsible for answering inmate grievances for inmates housed in E-dorm, and she was also responsible for making the decision to transfer Thomas from E-dorm to D-dorm (doc. 47, Sorey's Statement of Facts ¶¶ 10, 11; Price Aff. ¶ 9). Price transferred Thomas because he did not participate in the E-dorm programs, and he met the qualifications to be housed in D-dorm (doc. 47, Sorey's Statement of Facts ¶ 13; Price Aff. ¶¶ 8, 11). Price transferred him in an effort to maintain order and keep the organizational structure of the facility and its extracurricular programs in line with prison operations and standards (doc. 47, Sorey's Statement of Facts ¶ 13; Price Aff. ¶ 11; *see also* Ellis Aff. ¶ 7). Inmates are routinely transferred between housing units within the facility based

---

[1] Although both Ellis' and Price's affidavits state Thomas was transferred to D-dorm on March 31, <u>2012</u>, it is evident that this is a typographical error.

on the needs, resources, and best interests of the inmates and the facility (doc. 47, Sorey's Statement of Facts ¶ 14; Price Aff. ¶ 11). Price's decision to transfer Thomas to D-dorm was not part of a pattern or practice of retaliation in response to his filing grievances (doc. 47, Sorey's Statement of Facts ¶ 15; Price Aff. ¶ 10; Ellis Aff. ¶ 6). Sorey was not involved in the decision to transfer Thomas (doc. 47, Sorey's Statement of Facts ¶ 12; Price Aff. ¶ 9). Thomas remained in D-dorm assigned as a houseman until October 26, 2012, when he was transferred from Graceville C.F. to Jefferson Correctional Institution (doc. 47, Statement of Facts ¶ 5; Ellis Aff. ¶ 8 and Ex. 1).

In Thomas' Third Amended Complaint, he additionally alleged Sorey lied to other inmates about Thomas' being a sex offender, in order to bring harm to him at the hands of other inmates (doc. 27 at 6). Unit Manager Price investigated Thomas' allegations and found no evidence to substantiate them (doc. 47, Sorey's Statement of Facts ¶¶ 16, 18; Price Aff. ¶ 12).

III.    LEGAL STANDARDS

A.    Summary Judgment Standard

In order to prevail on her motion for summary judgment, Sorey must show that Thomas has no evidence to support his case or present affirmative evidence that Thomas will be unable to prove his case at trial. *See* Celotex Corp. v. Catrett, 477 U.S. 317, 322–23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). If Sorey successfully negates an essential element of Thomas' case, the burden shifts to Thomas to come forward with evidentiary material demonstrating a genuine issue of fact for trial. *Id.* The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*, 477 U.S. at 248. A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* Thomas must show more than the existence of a "metaphysical doubt" regarding the material facts. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). Speculation or conjecture from a party cannot create a genuine issue of material fact. *See* Cordoba v. Dillard's, Inc., 419 F.3d 1169, 1181 (11th Cir. 2005). "A mere scintilla of evidence in support of the nonmoving party will not suffice to overcome a motion for summary judgment." Young v.

City of Palm Bay, Fla., 358 F.3d 859, 860 (11th Cir. 2004); *see also* Celotex Corp., 477 U.S. at 324. Thomas must either point to evidence in the record or present additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. *See* Celotex Corp., *supra*; Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997) (Rule 56 requires the nonmoving party to go beyond the pleadings and by his or her own affidavits, or by the depositions, documents, affidavits or declarations, admissions, interrogatory answers or other materials on file designate specific facts showing that there is a genuine issue for trial); Hammer v. Slater, 20 F.3d 1137 (11th Cir. 1994).

Evidence presented by Thomas in opposition to the motion for summary judgment, and all reasonable factual inferences arising from it, must be viewed in the light most favorable to him. *See* Adickes v. S. H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970); Jones v. Cannon, 174 F.3d 1271, 1282 (11th Cir. 1999). Nonetheless, Thomas still bears the burden of coming forward with sufficient evidence of every element that he must prove. *See* Celotex Corp., 477 U.S. at 317. A motion for summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Celotex Corp., 477 U.S. at 322.

B.      First Amendment Retaliation Standard

It is well established that the First Amendment forbids prison officials from retaliating against prisoners for exercising the right of free speech. Crawford-El v Britton, 523 U.S. 574, 588 n.10, 592, 118 S. Ct. 1584, 140 L. Ed. 2d 759 (1998); Farrow v. West, 320 F.3d 1235, 1248 (11th Cir. 2003) (citations omitted); Adams v. James, 784 F.2d 1077, 1080 (11th Cir. 1986) (citation omitted); *see also* Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997); Wright v. Newsome, 795 F.2d 964, 968 (11th Cir. 1986). "A prisoner can establish retaliation by demonstrating that the prison official's actions were the result of his having filed a grievance concerning the conditions of his imprisonment." Farrow, 320 F.3d at 1248 (internal quotation and citation omitted). However, broad, conclusory allegations of retaliation are insufficient to state a claim under section 1983. Goldsmith v. Mayor and City Council of Baltimore, 987 F.2d 1064, 1071 (4th Cir. 1993); Flittie v. Solem, 827 F.2d 276, 281 (8th Cir. 1987); Gill v. Mooney, 824 F.2d 192, 194 (2d Cir. 1987). The prisoner plaintiff must sufficiently allege facts establishing that the actions taken against him were

in retaliation for filing grievances or lawsuits or otherwise accessing the courts. <u>Wright</u>, 795 F.2d at 968. He must allege facts showing that the allegedly retaliatory conduct would not have occurred but for the retaliatory motive. <u>Jackson v. Fair</u>, 846 F.2d 811, 820 (1st Cir. 1988). The plaintiff must allege a causal link between the protected activity and the adverse treatment, and there must be at least a "colorable suspicion" of retaliation for a complaint to survive and proceed into discovery. <u>Flaherty v. Coughlin</u>, 713 F.2d 10, 13 (2d Cir. 1983). Such a causal connection may be alleged by a chronology of events that create a plausible inference of retaliation. <u>Cain v. Lane</u>, 857 F.2d 1139, 1143 n.6 (7th Cir. 1988).

"[U]pon a prima facie showing of retaliatory harm, the burden shifts to the defendant official to demonstrate that even without the impetus to retaliate he would have taken the action complained of . . . ." <u>Hartman v. Moore</u>, 547 U.S. 250, 260, 126 S. Ct. 1695, 64 L. Ed. 2d 441 (2006) (citation omitted); <i>see also</i> <u>Mt. Healthy City Bd. of Ed. v. Doyle</u>, 429 U.S. 274, 287 (1977). In the context of a defendant's motion for summary judgment, however, the plaintiff has the ultimate burden of proof; therefore, the defendant need only point to evidence as to the legitimate reason, and the plaintiff must produce "affirmative evidence from which a jury could find that the plaintiff has carried his or her burden of proving the pertinent motive." <u>Crawford-El</u>, 523 U.S. at 600 (citing <u>Liberty Lobby, Inc.</u>, 477 U.S. at 256–57). "The relevant showing . . . must be more than the prisoner's 'personal belief that he is the victim of retaliation.'" <u>Johnson v. Rodriguez</u>, 110 F.3d 299, 310 (5th Cir. 1997) (quoting <u>Woods v. Edwards</u>, 51 F.3d 577, 580 (5th Cir. 1995)). Appropriate deference should be afforded to prison officials "in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." <u>Pratt v. Rowland</u>, 65 F.3d 802, 807 (9th Cir. 1995) (citation omitted). And, because regulatory actions taken by prison officials are presumed to be reasonable, the inmate must produce "specific, nonconclusory factual allegations that establish improper motive causing cognizable injury." <u>Crawford-El</u>, 523 U.S. at 598 (citation omitted); <u>Harris v. Ostrout</u>, 65 F.3d 912, 916–17 (11th Cir. 1995); <i>see also</i> <u>Colon v. Coughlin</u>, 58 F.3d 865, 872 (2d Cir. 1995) (because claims of retaliation may be easily fabricated, they should be reviewed with skepticism). To defeat a summary judgment motion, a plaintiff need not adduce clear and convincing evidence of improper motive, <u>Crawford-El</u>, 523 U.S. 574, but he must produce evidence

from which a jury could find by a preponderance of the evidence, that retaliation was the but-for cause of the challenged action.

"If there is a finding that retaliation was not the but-for cause of the action complained of, the claim fails for lack of causal connection between unconstitutional motive and resulting harm, despite proof of some retaliatory animus in the official's mind." Hartman, 547 U.S. at 260 (citing Mt. Healthy, 429 U.S. at 287); Crawford-El, 523 U.S. at 593. Indeed, "action colored by some degree of bad motive does not amount to a constitutional tort if that action would have been taken anyway." Hartman, *supra* (citing Crawford-El, 523 U.S. at 593; Mt. Healthy, 429 U.S. at 285–85). However, when nonretaliatory grounds are in fact insufficient to provoke the adverse consequences, retaliation is subject to recovery as the but-for cause of official action offending the Constitution. *Id.* (citation omitted).

IV.     ANALYSIS

Sorey presented evidence that Thomas' transfer from E-dorm to D-dorm was for a legitimate reason. Unit Manager Price states in her affidavit she transferred Thomas because he did not participate in the E-dorm programs, and he met the qualifications to be housed in D-dorm; therefore, she transferred him in an effort to maintain order in the facility and to keep the organizational structure of the facility and its extracurricular programs in line with prison operations and standards. Warden Ellis states in his affidavit that such transfers serve the penological interest of maintaining order within the facility and keeping its organizational structure and programs in line with prison operations and standards. Sorey also presented evidence, namely, Price's affidavit, that Price was the sole decisionmaker in Thomas' transfer, and Sorey was not involved in the decision. Thomas has not produced any affirmative evidence from which a jury could find, by a preponderance of the evidence, that retaliation was the but-for cause of his transfer from E-dorm to D-dorm. Therefore, Defendant Sorey is entitled to summary judgment.

V.     CONCLUSION

Viewing the evidence in the light most favorable to Thomas, the non-movant, Sorey has shown that there is no genuine dispute as to any material fact, and she is entitled to judgment as a matter of law. Therefore, Sorey's motion for summary judgment should be granted.

Accordingly, it is respectfully **RECOMMENDED**:

1.     That Defendant Sorey's motion for summary judgment (doc. 47) be **GRANTED** and this case be **DISMISSED with prejudice**.

2.     That the clerk be directed to enter judgment accordingly and close the file.

At Pensacola, Florida, this <u>1</u>st day of July 2013.


<u>/s/ *Elizabeth M. Timothy*</u>
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


<u>**NOTICE TO THE PARTIES**</u>

**Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon the magistrate judge and all other parties. Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**